(No. 30193.—
ALFRED M. LEACH, Appellee, *vs.* HENRY B. HAZEL *et al.,*
Appellants.

*Opinion filed September 18, 1947.*

SNELL & SEYFRIT, and VICTOR HEMPHILL, both of Carlinville, for appellants.

RINAKER, SMITH & HEBRON, of Carlinville, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Alfred M. Leach, appellee, filed his complaint in the circuit court of Macoupin County against Henry B. Hazel and Helen Hazel for specific performance, based upon an alleged contract mainly evidenced by correspondence. The complaint charges that through their agent the appellants sold the property to appellee. The appellants deny the material parts of the complaint, and plead affirmatively that no contract existed because there was no contract in writing between appellee and appellants, and that no agent of appellants had been authorized in writing to contract with appellee, as provided by the Statute of Frauds. Ill. Rev. Stat. 1945, chap. 59, par. 2.

It is undisputed that appellant Helen Hazel is a joint tenant with her husband, and that she had nothing to do with employing the agent or contracting with the appellee. The cause was referred to a master, who reported in favor of appellee, and objections to his report were overruled, and the court entered a decree, ordering appellants to deliver to the clerk of the court an abstract showing merchantable title to the premises, together with a warranty deed conveying the premises free and clear of all liens and encumbrances, except the 1946 general real estate taxes, to appellee, and in case of default the special master was directed to carry out the decree of the court. The appeal comes directly to this court because a freehold is involved.

On July 25, 1945, appellant Henry B. Hazel wrote a letter to a real estate broker, Everett Perrings, asking him

if he could sell in 90 days his house in Carlinville, at $2750 for "our part." Perrings answered and said that he would undertake to sell the premises for that price upon 90 days exclusive right to sell, but that there would be a small expense, *viz.*, $3.30 for revenue stamps and a small charge for bringing the abstract down to date. In reply to this Hazel wrote that he agreed to pay the small charges mentioned and give the exclusive right to sell for 90 days only. Shortly thereafter Perrings submitted a bid for $2600, out of which would be deducted his commission. Appellant Hazel immediately replied that he would not accept it. A few days thereafter Hazel received a letter from appellee, who said that he understood the place was for sale, and wanted to know the low dollar on it, and said he understood the price was $2650 for the place. Hazel replied to Leach, advising him that Mr. Perrings had the exclusive right to sell the premises, and also that his understanding of the price was wrong. Hazel then wrote Perrings about this prospective buyer, but told him he had made a mistake in the price. About a week after this Perrings wrote Hazel inquiring about what appeared to be an encroachment upon the property by one of the outbuildings of the next-door neighbor. Hazel was away, and Mrs. Hazel answered, referring him to a former owner, who could give him the information; and said they had given nobody permission to encroach upon the lot. In the letter Perrings asked about the abstract, and Mrs. Hazel in her reply stated that Mr. Hazel would have to send it, as she knew nothing about it.

On August 11, 1945, Perrings wrote Hazel and told him he had sold the place to Leach. He said he was mailing a deed for their signature, and upon execution he would collect the money and remit it. Nothing whatsoever was said in this letter about the terms, price, time of delivery or the conditions upon which the property had been sold. On August 14, Hazel discovered he was to be trans-

ferred from his then place of business, and directed negotiations for the sale of the property to cease. On August 9, Leach gave the broker, Perrings, a check for $200, which the latter explains was $125 brokerage fee and $75 on account of the purchase. Perrings did·not pay appellants any of it. Later this money was tendered back to Leach, who refused to receive it. On October 9, 1945, a letter was mailed to Hazel by appellee in which he said he had deposited in a bank $2625 in escrow, to be delivered upon receipt of an abstract "showing merchantable title in you and your wife, and a warranty deed signed by you and your wife conveying this property to me and my wife," and advising Hazel this was in accordance with his contract to purchase the Carlinville property.

In addition to these written exhibits Perrings testified he did not know Mrs. Hazel, and he never had any transactions with her, except the reply to his letter to Mr. Hazel above referred to. Both Mr. and Mrs. Hazel testified Mrs. Hazel never had agreed to the sale, and had announced to her husband she would not sign a deed to the property and was opposed to a sale, but Hazel testified that he had thought possibly he could "sell her" on the idea of signing up if he "made a deal" for the property. It is quite clear that Mrs. Hazel was opposed to the sale.

It is contended by appellants the appellee was not entitled to a specific performance or conveyance of this property, because there was no contract in writing signed by appellants, or signed by any agent of the appellants, authorized in writing by them to make such sale. Neither does the complaint allege there was any contract in writing, but sets out merely as exhibits the instruments above referred to. Appellee contends, however, that there was sufficient memoranda to comply with the Statute of Frauds, growing out of the correspondence between the parties.

From the foregoing recital of the facts, it is clear that nobody signed a contract with Leach to sell and deliver

the property. Perrings says he did not sign a contract; Leach does not claim that he did, and neither Mr. nor Mrs. Hazel signed such a contract. The claim of appellee narrows down to this situation: When Leach wrote Hazel directly about the property the latter replied it was exclusively in the hands of his broker, Perrings, and that he was sorry he could not deal with him directly. Appellee then refers to the letter that Hazel wrote to his broker Perrings, in which Hazel had stated "anything that is done regarding the sale will have to come through your office," and claims this combination of the letter from Hazel to Leach, and the other from Hazel to his own real estate broker amounts to saying to Leach that the terms and conditions of the contract were in the hands of his broker, and that he should go there to ascertain them. We do not see how such a construction can be placed upon these two letters, the one simply telling an inquirer he could not deal with him directly, and the other to his own broker assuring him he still had the exclusive right to sell the property. The letter from Hazel to Leach does not remotely resemble an acknowledgment of a contract *then made;* nor does it in the slightest degree change the original authorization given to the real estate broker.

We might stop at this point to say there appears no evidence that either Hazel or his agent signed anything in writing binding Hazel to convey the property to Leach. There is, however, another element present which would bar a decree for specific performance. The general principle, announced many times, is that a real estate broker employed by the owner to find a purchaser for a tract of land, although the terms of sale are fully prescribed, does not have authority to execute a contract of sale which will bind the owner. (*Jones* v. *Howard,* 234 Ill. 404; *Stein* v. *McKinney,* 313 Ill. 84; *O'Donnell* v. *Henley,* 327 Ill. 406; *Peters* v. *Windmiller,* 314 Ill. 496.) The rule is well settled in Illinois, and the principle adopted by all

of the cases cited is announced in *Jones* v. *Howard,* 234 Ill. 404, as follows: "The authorities seem to be of one accord that a real estate agent employed by the owner to find a purchaser for a tract of land, although the terms of sale are fully prescribed, does not have authority to execute a contract of sale which will bind the owner."

Perrings testified that he had not signed anything, even a receipt, when the $200 deposit was made by appellee, and therefore it is difficult to understand upon what theory the lower court proceeded in directing a decree, when the Statute of Frauds had been affirmatively pleaded.

There is another fatal objection to sustaining the decree of the circuit court. It will be observed that the letter appointing Perrings as agent provided that Hazel should receive $2750 for "our part." There was a mortgage upon the premises in the sum of $1600, which had been paid down to $1221. In accepting the agency Perrings made only two conditions, one the payment of revenue stamps, $3.30, and the other the extension of the abstract. However, when Leach came to demand a conveyance he required something in addition to what was contained in the proposal of Hazel to Perrings: (1) an abstract showing merchantable title; (2) a warranty deed signed by Hazel and his wife, which he claims was in accordance with his negotiations with Perrings. Perrings had no such authority and, by accepting a contract with conditions in it not in the terms of the offer, Leach could not compel specific performance. The court will not specifically enforce a contract of an agent for the sale of land, unless the agent has been authorized in writing to make such a contract. *Mitchell* v. *Art Institute of Chicago,* 269 Ill. 381.

It is also the law of Illinois that an agent can only sign a contract containing such terms as his principal authorized him to execute, and such authority must be in writing, signed by the principal, in order to comply with the Statute

of Frauds. (*Peters* v. *Windmiller,* 314 Ill. 496; *Stein* v. *McKinney,* 313 Ill. 84; *Kohlbrecher* v. *Guettermann,* 329 Ill. 246; *Morris* v. *Goldthorp,* 390 Ill. 186.) Under this rule, even if a contract could be construed from the correspondence between the parties, the appellee could not add to Hazel's proposal the requirement of a merchantable abstract of title, nor that a warranty deed be signed by Mr. and Mrs. Hazel. And if the agent, Perrings, attempted to contract with Leach, under the terms claimed by the latter, it was absolutely beyond the scope of his authority, and, hence, the contract was unenforcible.

The law is that to entitle a party to specific performance of a contract it is not enough to show that some kind of a contract exists between the parties, but the contract must be so definite and so certain in all of its terms that the court can require the specific thing contracted for to be done. *Kopprasch* v. *Satter,* 331 Ill. 126; *Peiffer* v. *Newcomer,* 326 Ill. 189; *Westphal* v. *Buenger,* 324 Ill. 77; *Carson* v. *Davis,* 171 Ill. 497; *Koch* v. *National Union Building Ass'n,* 137 Ill. 497.

It will be observed that when Leach delivered the money to the bank nothing was said about the mortgage on the premises; nothing was said about taxes, although they had become a lien on the property for several months; nothing was said about the date of possession; nor many of the other things that go into the closing of a real estate transaction. A contract for the sale of real estate cannot be enforced unless the writings contain the names of the vendor and the vendee, a description of the property sufficiently definite to identify it, the price, the terms and conditions of sale, and the signature of the party to be charged. *Stein* v. *McKinney,* 313 Ill. 84; *Elwell* v. *Hicks,* 238 Ill. 170.

When the court decreed that appellants deliver over to the circuit clerk an abstract showing merchantable title,

and that they deliver a warranty deed conveying the premises free and clear of encumbrances, except general taxes, he ordered something which was not in any of the correspondence or a part of any contract signed by the Hazels or by their broker; nor can it be inferred from any language contained in the correspondence.

Finally, it is contended that Mrs. Hazel is bound to convey because she telephoned her husband and furnished the information to Perrings about an apparent encroachment upon their property. Mrs. Hazel testified she was always opposed to the sale of the property; that she was opposed to it now, and would have refused, under any circumstances, to sign a deed. Hazel agreed in this, but said that he thought by salesmanship he could overcome her opposition. The appellee contends she has waived any right to object because she knowingly permitted her husband to deal with her real estate. This is mere assertion upon the part of the appellee. The evidence in the record shows that she objected to the sale, and we know of no rule which compels a wife to follow her husband's footsteps and ascertain what actions he is taking to sell property owned jointly by them. Her possession of the premises is notice of her rights, and if another expects a wife to be bound to sell real estate, she should be bound in the same manner as any other person who contracts to sell real estate. In this respect also the decree of the circuit court was erroneous.

After careful examination of the evidence, we are of the opinion the Statute of Frauds in this case was a perfect defense, and that it was properly pleaded, so as to raise the question for the court. The evidence shows that neither of the appellants signed any note or memorandum in writing agreeing to sell the property in controversy. And the evidence also shows that neither of the appellants gave the agent, Perrings, any authority in writing to bind

appellants to convey the property in question to appellee; and appellee proposed to purchase on terms the broker had no authority to offer.

The decree of the circuit court of Macoupin County is reversed and the cause remanded, with directions to dismiss the complaint for want of equity.

*Reversed and remanded, with directions.*