Silvio Davito, Plaintiff-Appellant, v. George Blakely, Andrea Blakely, Ryan Cawley, Walter Sale, and LaSalle National Bank, Defendants-Appellees.

Gen. No. 67–54.

Third District.

May 29, 1968.

Perona & Perona, of Spring Valley, and Hermes Kitsos, of Chicago, for appellant.

Winston, Strawn, Smith & Patterson, of Chicago, and Hollerich & Hurley, Herbolsheimer & Lannon, and Michael J. Faletti, of LaSalle, for appellees.

SCHEINEMAN, J.

The plaintiff, Dr. Silvio Davito, filed this suit for specific performance of an alleged contract with defend-

ant, George Blakely, for the purchase by Davito and sale by Blakely of a farm containing more than four hundred acres. Additional parties defendant included defendant's wife, the tenant on the farm, and a bank which held legal title in trust for Blakely. A second count added Ryan Cawley as a defendant charging him with fraud.

The principal defense was the Statute of Frauds, on the ground there was no sufficient writing signed by the parties to be charged. Copies of documents attached to the complaint were Exhibit A, a letter from Blakely to Cawley, and Exhibit B, a receipt for $5,000 signed by Cawley and given to Davito.

The letter from Blakely to Cawley dated August 27, 1964, reads as follows:

"In answer to your request for a firm price on the farm I stand firm as quoted at $240,000. I will not accept anything but cash, no trades, no contracts, etc. Hope this answers your questions." Signed, George Blakely.

The receipt, Exhibit B, dated August 28, 1964, is as follows:

"Received of Dr. Silvio Davito Five Thousand and no/100 Dollars, Blakely acreage on Dalzell Road, subject to provisions of tentative contract provisions agreeable to George Blakely att. and Dr. Silvio Davito, att." Signed, Ryan Cawley.

The complaint also alleged that Blakely impliedly agreed pursuant to the usual and customary practice in such sale "to provide evidence of merchantability of his title; that the closing date would be March 1, 1965; that Blakely would pay taxes for 1964 and prior years; that title would be conveyed by warranty deed signed by defendant and his wife; and that defendant would attach the required revenue stamps." None of these

198

"implied" provisions actually appear or were suggested in the signed document.

A subsequent paragraph in the complaint which in the first part stated the contract was oral, alleged as an alternative that Blakely made the offer to sell in writing and plaintiff accepted the offer; reference was made to Exhibits A and B attached. Other allegations stated Davito had arranged his financing, etc., and was ready, willing and able to perform.

Other facts brought out in evidence were that about the middle of July, 1964, Blakely had met Cawley and told of his desire to sell his farm located on the Dalzell Road, naming his price. Later Davito called Cawley by phone and inquired as to any farms he had for sale. He was told of the Blakely farm being on the market. Later he inspected the farm and sought to buy the wooded area. Cawley told him the farm would only be sold as a unit. From the middle of July to August 28th and for probably a couple of months thereafter it appears that Blakely and Davito had not met or even were acquainted. It is quite clear that when the letter of August 28 was executed by Blakely he had no particular purchaser in mind and did not even know of Davito as a prospect. In October or November Cawley arranged for the parties to meet in his office for the first time.

During this time other prospective buyers probably appeared. At least there was an organization known as St. Bede's which notified Cawley it would like to buy local real estate. Cawley told of the Blakely farm and sometime later St. Bede's made a written offer to purchase.

The evidence also disclosed that the trust which held title to the farm, had been created by Blakely's father and the Federal Government was asserting a tax lien against it.

Cawley testified that when he told Blakely about the $5,000 down payment, Blakely expressed approval and said he was very happy with the deal. This is not admitted by the testimony of Blakely. He claims that he was constantly asserting that the sale hinged on the tax problem in the estate which had to be cleared up. He received a letter September 10, 1964, from the plaintiff's attorneys saying that they had written St. Bede that Blakely could not sell to them because of his prior commitment. This disturbed Blakely, he called Cawley but Cawley said he knew nothing about it. Then defendant called plaintiff's attorneys and asked why they felt they had authority to write such a letter when there never was a document presented by him which gave them authority so that they had a right to this property. It is clear that Blakely was still contending that he had not made a final contract.

■ The chancellor who heard this case and decided in favor of defendants, expressed his doubts that the parties had ever come to a definite agreement of any kind, oral or otherwise. And certainly there was no written contract sufficiently definite to comply with the Statute of Frauds. There are some variations in the testimony and some of it indicates that plaintiff knew there was a matter of Federal taxes to be cleared up, the total acreage of the farm was not yet determined, and the closing date was in dispute. These are all matters which should be clearly settled by a signed memorandum to comply with the statute.

■ As to other rules of law, the following are pertinent: a memorandum to satisfy the statute must identify both parties. Kohlbrecher v. Guettermann, 329 Ill 246, 160 NE 142. It also held that a subsequent receipt signed by the broker and naming the vendee did not supply the defect in the document signed by the vendor.

■ Plaintiff's Exhibit A in the complaint is his Exhibit 1 in evidence. It does not name a vendee and of

course was a mere listing of property with no particular buyer in mind. "To constitute a valid contract, the minds of the parties must have met on the identity of persons with whom they are dealing. Everyone has a right to select and determine with whom he will contract and another cannot be thrust upon him without his consent." 12 Am Jur, Contracts, § 38.

██ ██ Reference is made in plaintiff's argument to the fact that a Court of Chancery sometimes refuses to apply the Statute of Frauds, where the result would be to perpetrate a fraud. Especially cited is Loeb v. Gendel, 23 Ill2d 502, 179 NE2d 7. But this doctrine applies where the defendant has contrived to defraud the plaintiff in some act other than a contract of sale. Following the quotation in appellant's brief, the Loeb case expressly adds the following qualification:

> "The moral wrong alone of refusing to be bound by an agreement because it fails to comply with the statute, does not suffice to estop a defendant from asserting the statute as a defense." Loeb v. Gendel, 23 Ill2d 502, at 504, 179 NE2d 7.

If this were not the applied rule the effect would be to nullify the statute and open the door to frauds it is intended to prevent. Moreover, the evidence in this case does not establish that there was even an oral contract between the parties.

██ The plaintiff also relies upon the rule of law that the contract may consist of several documents. While this is the law, it is also necessary that the various writings be connected in a definite manner. As stated in Western Metals Co. v. Hartman Ingot Metal Co., 303 Ill 479, 483, 135 NE 744, "It is equally well established that the signed writing or writings must refer expressly to the other writing, or the several writings must be so connected, either physically or otherwise, as to show by internal evidence that they relate to the

same contract." (Citing cases.) The documents in the case at bar fail to comply with this rule.

As for authority on this subject, reference is made to Williston on Contracts, Vol 4 (3d ed) § 581, as follows:

> "What is essential is that the signature of the parties to be charged shall authenticate the whole of the writing. It is, therefore, necessary to incorporate all of the documents included in a writing signed by him. It will not be enough to incorporate all into an unsigned writing, or include a writing signed by the plaintiff and, consequently, it is insufficient and immaterial that such a writing refers to a writing signed by the defendant."

It follows, that the plaintiff's Exhibit 3 cannot be considered as supplementing and completing the contract that must be signed by the parties to be changed.

Moreover, Cawley had no authority to make or execute a contract of the real estate listed for sale. "The general principle, announced many times, is that a real estate broker employed by the owner to find a purchaser for a tract of land, although the terms of sale are fully prescribed, does not have authority to execute a contract of sale which will bind the owner." Citing Leach v. Hazel, 398 Ill 33, 74 NE2d 797; Stein v. McKinney, 313 Ill 84, 144 NE 795; Jones v. Howard, 234 Ill 404, 84 NE 1041.

The conclusion is inescapable that plaintiff failed to establish a case for specific performance in Count I of his complaint and the chancellor was correct in his decree.

As to Count II plaintiff remarks he should have his down payment refunded. Whether the down payment should be refunded was not an issue in the case. Count II named Cawley as defendant and is not a claim for any liquidated sum. It is a claim for damages alleging

202

fraud consisting of false statements as to Cawley's authority.

A search of the testimony fails to disclose any evidence of false statements by Cawley. When plaintiff wanted something in writing to show Cawley's authority, it was obtained as requested. There is no testimony that Cawley ever made any statement as to the legal effect of this letter. He simply delivered the original document to the plaintiff. If plaintiff, or his attorneys, attached some legal significance to it, which it did not have, this was their own conclusion, not based on any statement by the defendant.

As for plaintiff's Exhibit 3, there is no misstatement of fact shown concerning it. On its face, it refers to the "tentative" contract, and adds it is "subject to provisions agreeable" to the parties. This receipt clearly indicates that Cawley was not asserting there was any final contract binding on defendant.

Therefore, the finding and decree of the chancellor to the effect there was no evidence of fraud, is actually supported by plaintiff's own evidence and exhibits.

Accordingly the decree of the Circuit Court is affirmed in all respects.

Decree affirmed.

ALLOY, P. J. and STOUDER, J., concur.