JOHN PRODROMOS, Plaintiff-Appellant, v. JERRY · POULOS *et al.*, Defendants (Jerry Poulos, Defendant-Appellee).

First District (6th Division) No. 1—89—0977

Opinion filed August 31, 1990.—Rehearing denied October 9, 1990.

EGAN, J., specially concurring in part and dissenting in part.

Ronald Gertzman, of Chicago, for appellant.

William T. Regas and Leslie P. Poole, both of Park Ridge (William T. Regas and Mark B. Friedman, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff John Prodromos brought an action for specific performance of a real estate sales contract and damages against First National Bank of Skokie, as trustee, u/t/a dated October 1, 1974, a/k/a trust No. 50102T (Trustee Bank), and Jerry Poulos, the sole beneficiary of the trust. The first amended complaint requested relief on three alternate theories: (1) specific performance of the contract by the Trustee Bank; (2) specific performance by defendant Poulos; or (3) damages against Poulos for unjust enrichment. Defendants moved pursuant to sections 2—619(a)(7) and 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—619(a)(7), (a)(9)) to dismiss counts I and II on the grounds that Poulos did not have written authority to act as an agent of the Trustee Bank, that the Trustee Bank neither executed the contract nor ratified Poulos' action, and that because Poulos signed the contract in a representative capacity he cannot be bound personally. The defendants moved to dismiss the third count on the grounds that the existence of an express contract precluded relief on a theory of unjust enrichment. The trial court granted the motion and dismissed all three counts with prejudice.

The issues presented on appeal are: (1) whether the action of the trustee in issuing three documents necessary to complete a real estate sales contract constitutes ratification of that contract even if the documents do not specifically refer to the contract; (2) whether the trust beneficiary who signed a contract as agent of the trustee but who was without authorization to do so can be personally compelled to perform; and (3) whether the complaint stated a cause of action in quasi contract. We affirm.

The parties agree on the following facts. In 1987, John Prodromos and Jerry Poulos owned adjoining parcels of real estate located in unincorporated Cook County, Illinois, outside of the Village of Glenview and the City of Prospect Heights. Legal title to the Poulos land was held by the Trustee Bank as trustee and Poulos was the sole beneficiary of the trust.

Under the terms of the trust, Poulos had power to direct the Trustee Bank to dispose of the property in various ways. However, Poulos could not act for the Trustee Bank:

"No beneficiary hereunder shall have any authority to contract for or in the name of the trustee or to bind the trustee personally."

In 1987, Glenview sought to annex both properties. Prodromos asked Poulos to join with him in resisting the Glenview annexation in order to negotiate better terms or in annexing with Prospect Heights.

Prodromos agreed to bear all expenses of these dealings which would enhance the value of both properties. In August 1987, Prodromos and Poulos agreed that, if Prodromos was successful in negotiating a favorable annexation, Poulos would agree to sell his property to Prodromos. Poulos would sell at a mutually agreed on price, and this agreement would be based in part on the annexation terms which Prodromos secured to enhance the value of the property.

After months of negotiations, Prodromos and Glenview reached a favorable annexation agreement enhancing the value of both properties. On January 5, 1988, Prodromos and Poulos met to complete the annexation agreement and to complete the documentation for the sale of Poulos' property to Prodromos.

In paragraph No. 2, the sales contract states:

"First National Bank of Skokie, as Trustee under Trust 50102T under agreement dated October 1, 1974 by: Jerry Poulos (Seller) agrees to sell the real estate and the property described above, if any, at the price and terms set forth herein, and to convey or cause to be conveyed to Purchaser or nominee title thereto by a recordable trustee's deed ***."

Poulos signed the first page of the contract "Jerry Poulos, as agent for First National Bank of Skokie, T/U/T 50102T dated October 1, 1974." The rider introduced both parties at the top, describing Poulos as an "agent" for the Trustee Bank. Poulos signed the rider twice as "Seller: Jerry Poulos."

Subsequently, Poulos caused the Trustee Bank to issue: (1) a trustee's deed conveying the property to the Bank of Ravenswood as trustee for trust No. 25—9017; (b) an ALTA statement; and (c) a proceeds letter addressed to the Bank of Ravenswood and designating Poulos and the Trustee Bank to be the recipients of monies and proceeds from the real estate transaction. However, these papers were not delivered to Prodromos.

Section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) provides:

"(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

* * *

(7) That the claim asserted is unenforceable under the provisions of the Statute of Frauds.

***

(9) That the claim asserted against defendant is barred by

other affirmative matter avoiding the legal effect of or defeating the claim."

The nonmoving party may then present affidavits or other affirmative matter to counter the affirmative defenses.

█ When deciding to grant a motion to dismiss based solely on the plaintiff's pleadings, the trial court must "take all well-pled allegations of fact contained in the complaint, and in any attached exhibits incorporated into the complaint, as true and construe all reasonable inferences therefrom in the plaintiff's favor." (*Paine/Wetzel Associates, Inc. v. Gitles* (1988), 174 Ill. App. 3d 389, 391, 528 N.E.2d 358.) If the only issue before the court is whether the complaint states a cause of action, then the court must "sustain the complaint unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to some type of relief." *Paine/Wetzel*, 174 Ill. App. 3d at 393.

In a motion brought under section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), the court must also consider whether the defendant has brought forth facts which constitute an affirmative defense that could defeat the plaintiff's cause of action.

I

Prodromos asserts that the actions of the Trustee Bank in issuing three documents needed to execute a real estate sale contract constitute ratification of that contract even though none of the documents refer to the contract specifically.

The Illinois Statute of Frauds (Ill. Rev. Stat. 1989, ch. 59, par. 2) provides:

"No action shall be brought to charge any person upon any contract for the sale of lands, * * * unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party."

█ Under the Statute of Frauds, a person cannot enforce a real estate contract unless: (1) there is a written memorandum or note on one or more documents; (2) the documents collectively contain a description of the property and the terms of sale, including price and manner of payment; and (3) the memorandum or note contains the signature of the party to be charged. *Shugan v. Colonial View Manor* (1982), 107 Ill. App. 3d 458, 464-65, 437 N.E.2d 731.

In this case, neither party disputes the existence of a written document with the property description and terms of sale and signature

of defendant Poulos as "agent" for the Trustee Bank. In his defense, Poulos disputes only whether the contract was subsequently ratified by the party to be charged, that is by the Trustee Bank.

■ In a contract for the sale of land, an agent may sign the contract only if the authority to do so is in writing. (*Cosmopolitan National Bank v. Kobialka* (1980), 85 Ill. App. 3d 1, 3, 406 N.E.2d 150, citing *Lipkin v. Koren* (1946), 392 Ill. 400, 64 N.E.2d 890, and *Leach v. Hazel* (1947), 398 Ill. 33, 74 N.E.2d 797.) If the agent's signature is unauthorized, however, the principal can ratify the agent's action after the fact by acceding to the action in writing. (*Kobialka*, 85 Ill. App. 3d at 4.) When he ratifies, the principal makes the agent's act obligatory upon himself and thus confirms what was originally an unauthorized act. *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 418, 222 N.E.2d 535.

" 'The general rule is that the act of ratification must be of the same nature as that which would be required for conferring the authority in the first instance.' " (*Kobialka*, 85 Ill. App. 3d at 4, quoting *Bruns v. Huseman* (1914), 266 Ill. 212, 215-16, 107 N.E. 462.) At the least, the document ratifying an action, must show that the principal fully understood that ratification included the contract at issue. (*Bruns*, 266 Ill. at 215-16.) Furthermore, when several writings are used to satisfy the Statute of Frauds in support of a contract, each writing "must refer expressly to the other writing, or the several writings must be so connected, either physically or otherwise, as to show by internal evidence that they relate to the same contract." *Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 303-04, 390 N.E.2d 428.

■ On appeal, Prodromos concedes that Poulos was not an authorized agent of the Trustee Bank, but claims that the bank ratified the action of Poulos. After Poulos signed the contract as an "agent" of the Trustee Bank, the bank nonetheless issued a trustee's deed, ALTA statement, and proceeds letter all dealing with the property in question. Thus, Prodromos argues, the Trustee Bank ratified the action of Poulos by issuing documents needed to complete the sale.

Poulos argues that the documents do not contain sufficient information to tie them to the improperly signed contract. They refer to the real estate in question but not to a contract with Prodromos. The trustee's deed does not mention either Prodomos or the contract, but instead names the Bank of Ravenswood as grantee. Similarly, the proceeds letter is addressed to Ravenswood and directs that bank to send proceeds to Poulos and the Trustee Bank. The ALTA statement does not refer to any of the parties. Overall, the effect of these documents

is to convey the property to a different trust.

The cases cited above state that ratification must be of the nature that would justify authorization in the first place and show that the ratifying party fully understood what was being ratified. To effect ratification, the documents must refer expressly to the contract documents. Thus, at a minimum, the Trustee Bank would have to ratify in a writing or set of writings that contained some reference to the real estate transaction and with appropriate signatures. In this case, the writings referred to the transfer of the specific property at issue but did not mention the Prodromos-Poulos sales contract. There are no allegations in the complaint that the Trustee Bank signed the documents with full understanding that these papers were connected with the Prodromos-Poulos contract.

Prodromos argues that although this fact is not specifically pleaded, we should infer it from other facts which are. This we cannot do. An inference is a "truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted." (Black's Law Dictionary 917 (4th ed. 1957).) We cannot conclude that a Prodromos-Poulos sales contract, including its terms, is a logical consequence to be inferred from the three mentioned documents.

Furthermore, "[t]he signing of the undelivered deed, without * * * showing that appellee fully understood what [it] was doing, cannot be held to be a ratification of the contract." (*Bruns*, 266 Ill. at 216.) If facts exist to establish that the Trustee Bank fully understood that the documents it prepared were connected with the Prodromos-Poulos contract, these facts should have been pled.

For these reasons, we hold that the complaint did not allege a cause of action against the Trustee Bank.

## II

Prodromos next contends that Poulos, who was sole beneficiary of the trust, can be compelled to perform on the land-sale contract even though he signed it as an "agent" of the Trustee Bank.

In Illinois, the beneficiary to a land trust may act in his own capacity and enter a contract for conveying trust property if he has the sole right to direct the trustee to convey title under the trust. (*Seaberg v. American National Bank & Trust Co.* (1976), 35 Ill. App. 3d 1065, 1069, 342 N.E.2d 751, citing *Feinberg v. Great Atlantic & Pacific Tea Co.* (1970), 131 Ill. App. 2d 1087, 1090-91, 266 N.E.2d 401; see also

*Paine/Wetzel*, 174 Ill. App. 3d at 394.) Under these cases, however, "the decisive principle [is] as follows: The beneficiary of a conventional land trust, as used in Illinois, may under appropriate circumstances enter into a valid contract to convey title to the trust property. He may do so not as agent of the trustee but in his capacity of beneficiary \*\*\*." *Seaberg*, 35 Ill. App. 3d at 1069, citing *Feinberg*, 131 Ill. App. 2d at 1087.

Prodromos cites *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 406-08, 371 N.E.2d 896, for the propositions that courts prefer contract enforcement rather than contract evasion and, therefore, will enforce a contract containing the language of conveyance and signed by the trust beneficiaries. In *Rizakos*, however, the buyer did not even know that a trust was involved and that the status of the signatories could become an issue. The court held that to deny specific enforcement of a contract under those circumstances "would not only allow the defendant-sellers to prejudice the plaintiff by permitting them to deny their true status as beneficiaries, but would also allow the defendants to have a unilateral option whereby they could choose to enforce or escape their obligation under this contract at their whim." *Rizakos*, 56 Ill. App. 3d at 407.

Prodromos also attempts to distinguish *Feinberg* and *Seaberg*, contending that, unlike the plaintiff in *Feinberg*, he was not the wrongdoer who then tried to enforce the lease which he himself had signed improperly and, unlike the beneficiary in *Seaberg*, Poulos did not sign a lease solely as an agent. Instead, he signed the body of the contract as an agent and promised "to convey or cause to be conveyed" the property in question and then signed the contract rider twice in his individual capacity. Prodromos argues that his case fits the facts of *Rizakos* in that Poulos signed a contract to convey real estate and should not be able to evade the consequences of his action simply because he signed in the wrong capacity.

■ In this case, Poulos signed a contract and rider, both of which referred to him as the "agent" of the Trustee Bank. At the time, Prodromos knew that the trust existed and that Poulos was sole beneficiary. The facts fit the proposition of law stated in *Feinberg* and *Seaberg*, not the exception described in *Rizakos*.

Further, the Statute of Frauds applies in sales contracts even where the person seeking protection has contrived to defraud the plaintiff. The point is preventing greater evil.

> " 'The moral wrong alone of refusing to be bound by an agreement because it fails to comply with the statute, does not suffice to estop a defendant from asserting the statute as a defense.'
>
> If this were not the applied rule the effect would be to nullify

the statute and open the door to frauds it is intended to prevent." *Davito v. Blakely* (1968), 96 Ill. App. 2d 196, 201, 238 N.E.2d 410, quoting *Loeb v. Gendel* (1961), 23 Ill. 2d 502, 504, 179 N.E.2d 7.

Plaintiff also argues that if the contract is held to be unenforceable, he is without a remedy and the wrongdoer is allowed to escape. Because no attempt was made to plead other forms of action, such as breach of implied warranty of authority (*Feinberg*, 131 Ill. App. 2d at 1090) or fraud (*Seaberg*, 35 Ill. App. 3d at 1071), we will not speculate as to their viability.

For these reasons, we affirm the trial court's decision on count II.

### III

Prodromos argues in the alternative that he has a cause of action against Poulos for unjust enrichment even though the parties had an express, but unenforceable, contract.

■ As a rule, plaintiffs cannot pursue quasi-contractual claims where there is an express contract between the parties. (*Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.* (1982), 104 Ill. App. 3d 357, 360, 432 N.E.2d 999.) This rule holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore his expectations. Quasi-contract, thus, is available only in the absence of an express agreement and "is not a means for shifting a risk one has assumed under contract." *Industrial Lift*, 104 Ill. App. 3d at 361.

Quasi-contract arises from the relations between the parties or from a voluntary act of one of them. (*Board of Directors of Carriage Way Property Owners Association v. Western National Bank* (1985), 139 Ill. App. 3d 542, 547, 487 N.E.2d 974.) Action under this theory can occur "wherever one party has benefited from the services of another under circumstances in which, according to the dictates of equity and good conscience, he ought not to retain such benefit." *Carriage Way*, 139 Ill. App. 3d at 548.

In some circumstances, the relationship between the parties allows relief even if an express agreement also existed. When, for example, an express contract to convey land is unenforceable because of the Statute of Frauds, courts of equity may "furnish a more complete and fuller justice than that afforded by an action at law" and order specific performance on the contract. (*Tess v. Radley* (1952), 412 Ill. 405, 410-11, 107 N.E.2d 677.) This remedy requires, however, that the contract be fully performed by one party and that "performance must be such that if the remedy is withheld it would be a fraud upon the

promisee if the agreement were not carried out." *Tess,* 412 Ill. at 411.

▉ The facts here show that Prodromos did have a contract. The fact that the contract was unenforceable under the Statute of Frauds means only that Prodromos made a bad bargain. The court cannot interfere. The facts show further that Prodromos stood ready to perform, but not that he had paid for the land and then received nothing in return. Under *Industrial Lift* he cannot seek relief simply because he bargained for a contract which he could not enforce and this disappointed his expectations. Under *Tess* he cannot seek relief simply because he was ready to perform on the unenforceable contract.

For the reasons stated, the judgment of the trial court is affirmed.

Judgment affirmed.

McNAMARA, J., concurs.

JUSTICE EGAN, dissenting in part and specially concurring in part:

I respectfully dissent. I would reverse the order of the trial court's dismissal of counts I and II of the complaint. Since count I is pleaded alternatively to count II, I will discuss count II first.

Reduced to the essentials of the complaint, the facts are these: The plaintiff learned that the Village of Glenview intended to annex properties including those owned by the plaintiff and the defendant. The plaintiff asked the defendant to join with him in resisting annexation by Glenview. They agreed that if the plaintiff was successful in negotiating a settlement which would increase the value of their properties, the defendant would sell his property to the plaintiff at a price to be based on the favorable annexation terms. The plaintiff retained a lawyer to represent both him and the defendant in the negotiations with Glenview. After months of negotiations with Glenview, the plaintiff successfully completed an annexation agreement resulting in an increase in the value of the defendant's property as well as the plaintiff's property.

On January 5, 1988, the defendant, represented by his own counsel, executed a letter of direction directing the trustee bank to enter into an annexation agreement with Glenview. On the same day the defendant signed the real estate contract in issue here as agent of the trustee, but the defendant made it clear, and the plaintiff knew, that the defendant was the sole beneficiary of the trust. The parties also entered into an escrow agreement and the plaintiff issued a check in

the amount of $40,000 payable to the Intercounty Title Company.

The defendant caused the trustee bank to issue a trustee deed to the Bank of Ravenswood under a land trust created by the plaintiff, an ALTA statement and a proceeds letter authorizing the Bank of Ravenswood to pay the trustee bank and the defendant the entire proceeds from the sale of the property. The proceeds letter said that the authorization for the distribution was given pursuant to the direction of the defendant beneficiary. The defendant refused to appear on the designated date for the closing.

From this record two overriding facts appear: Through the efforts of the plaintiff the defendant now is richer, and the defendant has insulated himself from any liability for specific performance because he misrepresented his authority to the plaintiff. Such a result, in my judgment, violates fundamental principles of equity and fair dealing.

The two cases relied upon by the defendant and accepted by the majority are *Seaberg v. American National Bank & Trust Co.* (1976), 35 Ill. App. 3d 1065, 342 N.E.2d 751, and *Feinberg v. Great Atlantic & Pacific Tea Co.* (1970), 131 Ill. App. 2d 1087, 266 N.E.2d 401. *Seaberg* depended on *Feinberg* and another case cited in *Feinberg*, *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431, which is also cited by the defendant here. Since *Madigan* is the precedential underpinning of *Feinberg* and *Seaberg* the appropriate discussion should begin with that case.

In *Madigan*, the plaintiff was a beneficiary of a land trust who contracted with the defendants for the sale of land. The plaintiff held herself out as the owner of the property. The defendant defended on the ground that the plaintiff was not the owner of legal title to the property, the trustee was. The appellate court upheld judgment for the defendants. It distinguished the cases cited by the plaintiff because "the purchaser [in each of those cases] knew that he was dealing with the beneficiary." (125 Ill. App. 2d at 16.) In this case, I repeat, the purchaser knew he was dealing with the beneficiary.

In *Feinberg*, it was the beneficiary lessor who sued the lessee for breach of a lease. The appellate court denied relief to the plaintiff on the ground that the plaintiff beneficiary had signed the lease as an agent of the trustee. In so ruling the court relied on *Madigan*. It should be noted that in both *Feinberg* and *Madigan*, unlike this case, it was the plaintiff who had arguably misrepresented his authority.

In *Seaberg*, the defendant, a beneficiary of a land trust, entered into a lease with the plaintiffs. The beneficiary signed the lease as agent of the trustee. The lease provided for an option to purchase the property. Correspondence was exchanged between the parties through

which the plaintiffs maintained that they had exercised the option to purchase the property. A majority of the appellate court upheld the denial of specific performance to the plaintiffs on two grounds: the lack of authority of the beneficiary to act as an agent and the legal insufficiency of the "option" exercised by the plaintiffs. In holding that the beneficiary lacked authority to act as the agent, the majority depended upon *Feinberg* and *Madigan*.

The special concurring opinion, however, agreed with the majority that the option had not been properly exercised but dissented from the holding that the actions of the beneficiary did not bind the trustee, thereby requiring specific performance. The special concurring opinion made these pertinent observations:

"I disagree with the court's opinion, however, because it follows the traditional approach to land trusts which is to view the actual owner separate and apart from the title holder, thus *permitting the owner to use the land trust as an escape from obligations he has assumed with respect to his real estate.*

The court's opinion points up the artificialities resorted to in dealing with land trusts to mask the realities of the relationship between the trustee holding legal title and the one who has the power to say what should be done with the property. [The defendant] had the sole power to direct the trustee, and he and his wife were the beneficiaries of the trust. Had [the defendant] and his wife styled themselves as beneficiaries, signed the lease as beneficiaries and incorporated a provision agreeing to cause title to be conveyed when the option was exercised by the lessee, the option would have been valid under the holding in *House of Realty, Inc. v. Ziff* (1973), 9 Ill. App. 3d 419, 292 N.E.2d 71. *Because [the defendant] departed from those formalities by identifying himself instead as 'duly authorized agent' for the trustee who was named in the lease, signed the lease in his own name and did not specifically agree to cause title to be transferred, [the defendant] is excused by the court's opinion from performing an arrangement he entered into with respect to property which he and only he could direct be conveyed to plaintiffs.*

[The defendant] managed the real estate and collected rent from the plaintiffs for several years. He gave them two leases, one in 1969 for a term of 1 year with an option to extend for an additional 15 months at an increased rental and the second in 1972 for a term of 2 years, again with an increased rental and with the option to purchase which gives rise to the contro-

versy between the parties. All of this was with the acquiescence of [the wife of the defendant] who during the years involved gave her husband full authority to manage the property and to deal with the trustee. Under these circumstances, *I regard the land trust as abused by applying the line of cases [including Feinberg and Madigan] that permit [the defendant] to separate himself from the land trust, cast himself in the role of a stranger to it and in effect use the land trust device to shield himself from his own actions* with respect to the property held for his benefit in the land trust." (Emphasis added.) *Seaberg,* 35 Ill. App. 3d at 1074-75.

I adhere to the conclusion and reasoning expressed in the special concurring opinion which refused to follow *Feinberg* and *Madigan.* In addition, I believe that the facts in this case are stronger for the plaintiff's position than in *Seaberg* in that under the agreement in this case the defendant agreed "to convey *or cause to be conveyed* to [the plaintiff] *** a recordable trustee's deed." (Emphasis added.)

A final word about *Feinberg.* The defendant emphasizes that leave to appeal from the appellate court was denied by the supreme court. Our supreme court has held that a denial of leave to appeal carries no connotation of approval or disapproval of the appellate court action and signifies only that four members of the court, for reasons satisfactory to them, did not vote to grant leave. *People v. Vance* (1979), 76 Ill. 2d 171, 183, 390 N.E.2d 867, 872.

Another case which criticized and refused to follow *Madigan* is *Lampinen v. Hicks* (1979), 73 Ill. App. 3d 376, 391 N.E.2d 1105. In *Lampinen,* the facts were the same as those in *Madigan:* A beneficiary seller held himself out as the owner of the property. The appellate court reversed the judgment for the purchaser and expressly refused to follow the ultimate finding in *Madigan.*

The plaintiff has cited *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 371 N.E.2d 896, which the majority seek to distinguish because the buyer in *Rizakos* did not know that a trust was involved. I believe the distinction noted by the majority is insignificant and does not detract from the case's compelling applicability here. In *Rizakos* the plaintiff purchaser sued the beneficiaries of a land trust for specific performance of a sale of real estate. The defendants signed the sale contract as "sellers." The appellate court reversed the order dismissing the complaint and relied in part on the equitable principle of estoppel (although estoppel was not expressly pleaded). The appellate court held that the sellers should not be permitted to take advantage of their failure to inform the buyer that they were beneficial instead

of legal owners. I believe the same argument can be made here: The defendant should not be permitted to take advantage of the fact that he misrepresented to the plaintiff that the defendant was an agent of the trustee.

The majority also state that "the Statute of Frauds applies in sales contracts even where the person seeking protection has contrived to defraud the plaintiff. The point is preventing greater evil." (202 Ill. App. 3d at 1031.) In support of what appears to me to be an astonishing pronouncement, the majority cite *Davito v. Blakely* (1968), 96 Ill. App. 2d 196, 238 N.E.2d 410, and *Loeb v. Gendel* (1961), 23 Ill. 2d 502, 179 N.E.2d 7. I believe the majority have misinterpreted the language of those cases. The only reasonable interpretation of those cases is that the mere fact that one enters into an agreement which is unenforceable under the Statute of Frauds does not itself constitute a fraud.

After the supreme court made the remark referred to in the majority opinion, the supreme court added the following:

> "This court has long recognized the inequity of allowing one to utilize the Statute of Frauds to work an injustice or fraud, and has refused in such cases to permit its assertion as a defense. [Citations.] The courts of equity will not permit the Statute of Frauds, the only purpose of which is to prevent fraud, to be used where the effect will be to accomplish a fraud, and if the facts are such that it would be a virtual fraud to permit the defendant to interpose the statute, a court of equity will not listen to that defense. [Citations.] Appropriate here is the following language of this court in *National Importing and Trading Co. v. Bear & Co.* [(1927),] 324 Ill. 346, 358: 'It is a principle reaching to the very roots of justice that no man shall be allowed to take advantage of another's omission which has been induced by his own request. The Statute of Frauds was not designed or intended to afford an opportunity for escape from the fundamental principle that no one shall be permitted to found a claim upon his own iniquity or take advantage of his own wrong.' " (23 Ill. 2d at 505.)

Those cases cited by the majority do not mean that one may make with impunity an intentional misrepresentation to induce another to enter into a sales agreement to his detriment and then seek the protection of the Statute of Frauds.

The majority also say that they would not speculate on the viability of other forms of action, such as breach of implied warranty of authority or fraud, since the plaintiff made no attempt to plead other

forms of action. This seems a suggestion by the majority that the blow of denying specific performance is softened by the availability of other relief but that the plaintiff negligently failed to seek the other relief. To me it is unrealistic to ignore the difficulties that the plaintiff would face in attempting to prove fraud or breach of implied warranty of authority. It is reasonable to assume that the defendant would maintain that he did not intentionally make a misrepresentation of his authority with an intent to deceive the plaintiff; that the plaintiff knew or in the exercise of due diligence could have learned of the lack of authority; and that the plaintiff suffered no damage.

In sum, in my judgment, a beneficiary of a land trust who signs a lease or a contract for the sale of land should be bound regardless of whether he represents himself as owner, beneficiary or agent of the trustee. In the context of a land trust, they are artificial distinctions and should not be recognized.

In *Lampinen v. Hicks*, the appellate court, as noted, refused to follow *Madigan*. It disagreed with the expression in *Madigan* that the land trust is of such importance that it must be preserved by the courts. The court added, "It may well be that the time has come to void or avoid land trusts in Illinois." (*Lampinen*, 73 Ill. App. 3d at 379.) If the result reached in this case may stand, I would join in that expression of the appellate court in *Lampinen*.

COUNT I

I disagree also with the majority's opinion that count I was properly dismissed. As the majority note, a complaint may not be dismissed "unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to some type of relief." (*Paine/Wetzel Associates, Inc. v. Gitles* (1988), 174 Ill. App. 3d 389, 393, 528 N.E.2d 358; see 202 Ill. App. 3d at 1028.) The issue is whether under count I the plaintiff could prove a set of facts which would establish ratification of the acts of the defendant by the trustee. I believe that it is possible for the plaintiff to prove such a set of facts.

Ratification is a question of fact where the evidence admits of different interpretations. (3 C.J.S. *Agency* §549 (1973).) Ratification rests on the intentions of the principal and requires that the principal possess full knowledge of the facts. (*Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535.) At this point I note the observation of the majority that "[t]here are no allegations in the complaint that the Trustee Bank signed the documents with full understanding that these papers were connected with the Prodromos-Poulos contract."

(202 Ill. App. 3d at 1030.) The majority also say that, "[the plaintiff] argues that although this fact is not specifically pleaded, we should infer it from other facts which are." (202 Ill. App. 3d at 1030.) The majority conclude that it cannot be inferred from the pleadings, including the three documents relied on by the plaintiff, that the trustee had knowledge of the contract.

I disagree with the majority for a number of reasons. First, the dismissal order recited that "the complaint was dismissed with prejudice *without further leave to amend* by the Plaintiff on the grounds that all Counts therein are insufficient as a matter of law and are fatally defective." (Emphasis added.) The defendant never argued in the trial court, nor does he in this court, that the complaint failed to allege knowledge of the contract on the part of the trustee. Moreover, the only reference to the bank's knowledge was made by the plaintiff himself in his opening brief when he said, "Although ratification generally requires the principal to have full knowledge of all the material facts, silence under a certain set of circumstances can equate to the requisite ratification."

The defendant's argument in the trial court was, and is in this court, that the documents were never delivered to the plaintiff and that they did not refer to the contract of sale. It is unfair, therefore, for this court, on its own initiative, to penalize the plaintiff for failing to expressly plead that the trustee had knowledge of the contract of sale, an argument not advanced by the defendant here. Any deficiency in the pleading, if called to the attention of the plaintiff in the trial court, could have been corrected by amendment.

Second, I disagree that it is not a proper inference to be drawn from the circumstances pleaded that the trustee had knowledge of the contract. The trust of which the defendant was the beneficiary was with the Bank of Skokie as trustee under trust number 50102T. On January 5, 1988, the trustee Bank of Skokie prepared and signed a trustee's deed and identified the trust as 50102T. It recited that the conveyance was made pursuant to direction. (The defendant had the sole power of direction.) The complaint alleges that the defendant signed a letter directing the trustee to execute a trustee deed conveying the property to the Bank of Ravenswood. It also alleges that the trustee did execute the document at the written direction of the defendant and that the defendant "caused" the trustee to execute the documents. The grantee was the Bank of Ravenswood as trustee. The ALTA statement was also prepared and signed by the bank as trustee under trust number 50102T. On January 5, 1988, the same date that the trustee deed was executed (and the contract was signed), the

agent of the Bank of Skokie under trust 50102T signed the proceeds letter authorizing the Bank of Ravenswood as trustee, the grantee of the property, to pay the proceeds of the sale of the property to the Skokie Bank *and the defendant.*

It is inconceivable to me that these facts do not, as a matter of law, circumstantially establish that the trustee had knowledge of the contract of sale between the plaintiff and the bank's beneficiary. The documents were not generated out of thin air or through the whim or caprice of the trustee.

In like vein, I believe the complaint, including the documents, created a question of fact whether the trustee, by executing the documents, intended to ratify the act of the defendant. The rule requiring written ratification is satisfied if several writings are so connected, either physically or otherwise, as to show by internal evidence that they relate to the same contract. *Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 390 N.E.2d 428.

The same assistant vice-president and trust officer signed all three documents; it is clear that at least the trustee deed and proceeds letter were signed on the same date that the contract was signed. All three documents are signed in the capacity as trustee under trust number 50102T. The bank knew that the defendant was the beneficiary of the trust and that only he had the power of direction. It knew that the property could be conveyed pursuant only to a written agreement and that the bank itself had not executed any written agreement. Consequently, the only reasonable inference to be drawn is that the bank knew that the defendant had executed a written agreement. The bank expressly stated that it was executing the conveyance pursuant to direction. In my judgment, the documents created at least a question of fact whether they represented an intention on the part of the bank to ratify the actions of its beneficiary. The rule that authority of an agent to execute a written contract must also be in writing was designed to protect the principal and to permit the principal to avoid obligations created by an agent. The terms of the land trust agreement itself protect the principal regardless of the actions of the beneficiary. To hold here that the record fails to establish as least a fact question as to whether or not the trustee ratified the actions of the beneficiary would not redound to the protection of the trustee but would only permit the beneficiary to avoid his obligations.

I do not believe the case cited by the defendant, *Cosmopolitan National Bank v. Kobialka* (1980), 85 Ill. App. 3d 1, 406 N.E.2d 150, is apposite. In that case the lawyer for the beneficiaries signed

the contract of sale. The purchasers argued that certain writings constituted the necessary written ratification by the beneficiaries of their attorney's action. The writings included a letter sent by the attorney for the purchasers to the attorney for the beneficiaries who had signed the contract and a letter from the attorney for the beneficiaries to the attorney for the purchasers stating that a check was enclosed to return the earnest money of the purchasers and stating that the letter "shall stand as cancellation" of the contract that had been signed by the attorney. The second letter also stated that if the lawyer for the purchasers prepared documents concerning the right of first refusal, the attorney for the beneficiaries would "cause them to be executed by [his] clients." The last document was a written direction to the trustee bank instructing the bank to execute a "Grant of Right of First Refusal" to one of the purchasers. The document was signed by the beneficiaries. The documents relevant to the right of first refusal were never executed. The purchasers argued that the conduct of the beneficiaries in directing the execution of documents promised by their attorney ratified their attorney's execution of the real estate contract. Factually, *Kobialka* is wide of the mark in this case. The letter of direction in that case can hardly be equated with the trustee deed and proceeds letter signed by the trustee in this case. I note that the appellate court pointedly observed that there was no allegation that the beneficiaries themselves misrepresented anything. Parenthetically, I find it interesting that the beneficiaries did not argue that there was no ratification because the *trustee* had not ratified the actions of the beneficiaries' agent.

The defendant has referred to a number of variances between the contract and the documents. For example, the contract names the plaintiff, John Prodromos, as the purchaser and the trustee deed and the proceeds letter refer to the Bank of Ravenswood as purchaser. I believe that the differences between the documents go only to the weight of the evidence. They do not establish, as a matter of law, that no question of fact exists as to whether the bank intended to ratify the actions of the defendant by executing the documents.

Last, although the majority did not address the question, I wish to make it clear that I do not accept the defendant's argument that the documents may not be considered because they were not delivered to the plaintiff. He cites no authority in support of the argument, and I do not believe one exists.

## COUNT III

The majority affirm the dismissal of count III on the ground that specific performance may be granted only where the contract is fully performed by the party seeking relief and that the plaintiff had not performed. Count III, however, does not seek specific performance; it seeks damages. For that reason, I cannot agree with the majority's reasoning. I am unable to determine with reasonable certainty from the complaint and the plaintiff's briefs exactly what the basis of his claim is. All the factual allegations of counts I and II are repeated in count III. Count III adds that the defendant was "unjustly enriched to the detriment of the plaintiff" as a result of the negotiations performed by the plaintiff with the Village of Glenview. I would *guess* that the relief sought is not dependent on the written contract, but I am not sure. If the plaintiff is claiming damages from the defendant based on the work and time that he expended in the negotiations with the Village of Glenview pursuant to an agreement with the defendant and that the defendant was thereby enriched, that is one thing. It is another thing, however, if the plaintiff is seeking damages for unjust enrichment based on the written contract that he entered with the defendant which is now repudiated. If the claim is based on the written contract, then, in my judgment, the order dismissing count III should be affirmed. The plaintiff's argument in his brief on this point consists of the following three sentences:

> "It is apparent that the Defendants failed to notice Count III of the Amended Complaint was pled in the alternative. Although Plaintiff is aware that a quasi-contractual claim cannot arise from a written agreement between the parties concerning the same subject matter, the Defendants in this proceedings [*sic*] have expended great effort to convince this court that the real estate contract is not valid and thus does not exist as a contract. For the Defendants in Count III to now claim that the quasi-contractual claim for unjust enrichment is barred by the real estate contract only demonstrates the bizarre circuitous illogic of the defendant's arguments."

Since I am unable to determine what the plaintiff's claim is based on, I conclude that he has failed to properly preserve the point for review. I therefore would affirm the dismissal of count III.