2023 IL App (1st) 220070

No. 1-22-0070

Order filed June 30, 2023

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF COOK COUNTY, ILLINOIS, for Order of Judgment and Sale of Lands and Lots Upon Which All or a Part of the General Taxes for Three or More Years Are Delinquent <br><br> (DJJ Investments, LLC, <br><br>    Petitioner-Appellant, <br><br>  v. <br><br> Neldava, LLC, <br><br>    Respondent-Appellee). | Appeal from the Circuit Court of Cook County, Illinois. <br><br> No. 2015 COTD 003154 <br><br> The Honorable <br> Maureen O. Hannon, <br> Judge, Presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1     On January 9, 2014, Millennium Land Development Corporation (Millennium) purchased the 2007 to 2011 delinquent property taxes on a property located at 116 N. Pulaski Road, Chicago, Illinois (Guyon Hotel), and the county clerk of Cook County issued a certificate of purchase to

Millennium. In October 2015, Millennium assigned the certificate of purchase to Illinois Land Trust No. 8002359629 (Land Trust). In May 2017, the Land Trust assigned the certificate to appellee Neldava, LLC (Neldava). The circuit court substituted Neldava as the tax deed petitioner and entered an order directing the county clerk to issue a tax deed on May 26, 2017. About two months later, appellant DJJ Investments, LLC (DJJ), filed a petition to void tax deed or vacate the order issuing the tax deed as well as subsequent amendments. In the third amended petition, count I alleged the tax deed was void under section 22-85 of the Property Tax Code (35 ILCS 200/22-85 (West 2016)). Count II alleged the court should vacate the order issuing the tax deed under section 22-45 of the Property Tax Code (*id.* § 22-45) and section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) and issue an order directing DJJ to pay the reimbursement amount under section 22-80 of the Property Tax Code (35 ILCS 200/22-80 (West 2016)). Neldava filed an answer to the third amended petition raising an affirmative defense of ratification as to DJJ's allegations that the certificate assignments were fraudulent and void. DJJ filed a motion to dismiss the affirmative defense of ratification, which the court denied. The case proceeded to trial, and after the presentment of evidence, DJJ filed a renewed motion to dismiss and alternative answer to the affirmative defense of ratification. The court entered judgment in favor of Neldava and against DJJ. On appeal, DJJ argues the circuit court erred in denying (1) the motion to dismiss Neldava's affirmative defense of ratification, (2) count I of the third amended petition alleging the tax deed was void, and (3) count II of the third amended petition alleging the order issuing the tax deed should be vacated. For the following reasons, we affirm the circuit court's judgment.

¶ 2                                        I. BACKGROUND

¶ 3 On January 9, 2014, Millennium purchased the 2007 to 2011 delinquent property taxes on a property located at 116 N. Pulaski Road, Chicago, Illinois. The subject property is commonly known as the Guyon Hotel. The county clerk of Cook County issued a certificate of purchase on the Guyon Hotel to Millennium on March 19, 2014. On September 29, 2014, DJJ acquired a judicial deed to the Guyon Hotel through a foreclosure of a receiver's lien.

¶ 4 On October 1, 2015, Millennium, through its attorney, Kenneth Pilota, assigned the certificate of purchase to the Land Trust. The Land Trust beneficiary was a trust titled O.M.A.M.E.G.A.N. trust. Hildegard Szkirpan was the trustee and primary beneficiary of the O.M.A.M.E.G.A.N trust and had power of direction of the O.M.A.M.E.G.A.N. trust. Hildegard is also the mother of Daniel Szkirpan, the president of Millennium. The O.M.A.M.E.G.A.N trust owns Millennium's corporate shares. On October 28, 2015, Pilota, on behalf of the Land Trust, filed a petition for tax deed. The petition states the period of redemption for the sale expired on March 17, 2016. The court granted a motion to extend the redemption expiration date to June 10, 2016. The Guyon Hotel was not redeemed by June 10, 2016.

¶ 5 Between February 2016 and May 2017, Noah Weininger and his law firm, Johnson, Blumberg & Associates, LLC (Johnson, Blumberg & Associates),[1] acted on behalf of DJJ concerning the Guyon Hotel. On February 2, 2016, Johnson, Blumberg & Associates ordered an estimate of redemption regarding the Guyon Hotel from the Cook County Clerk's Office. The estimate of redemption invoice references the subject tax sale and certificate of purchase number. After being informed that someone was attempting to sell the Guyon Hotel, Weininger sent a letter

---

[1]The estimate of redemption invoice lists the customer as "Johnson, Blumberg & Associated" at "230 West Monroe Street #1125 Chicago, IL 60606." The entity listed on the letterhead of Weininger's letters is "Johnson, Blumberg & Associates, LLC" at "230 West Monroe Street, Suite 1125, Chicago, Illinois 60606."

to Brian Ploszay of Altura Realty on November 3, 2016, stating "DJJ is the owner of the Property by virtue of a Judicial Sale Deed" and Ploszay should "immediately terminate any and all advertisements or listings on the Property for any purpose." On November 8, 2016, Johnson, Blumberg & Associates ordered a second estimate of redemption from the Cook County Clerk's Office. The estimate provides that the Guyon Hotel was sold to Millennium in a scavenger sale and the final redemption date was June 10, 2016. After being informed about another attempt to sell the Guyon Hotel, Weininger sent a letter to Nick Pancotto of Coldwell Banker Residential on May 22, 2017, stating "DJJ is the owner of the Property by virtue of a Judicial Sale Deed" and Pancotto should "immediately terminate any and all advertisements or listings on the Property for any purpose."

¶ 6      On May 23, 2017, Daniel assigned the certificate of purchase to Neldava as attorney in fact for the Land Trust. On May 26, the court granted a motion to substitute Neldava as the tax deed petitioner. The same day, after finding Neldava had "fully complied with all the statutes and the Constitution of the State of Illinois relating to sales of real estate for taxes and the issuance of Tax Deeds," the court entered an order directing the county clerk to issue a tax deed to Neldava. Neldava recorded the tax deed on June 6, 2017.

¶ 7      On August 4, 2017, DJJ filed a petition to void the tax deed or vacate the order issuing the tax deed. The petition was subsequently amended three times, and DJJ filed the final third amended petition to void the tax deed or vacate the order issuing the tax deed on May 28, 2021. DJJ raised three counts in the third amended petition. Under count I, DJJ alleged the motion to issue tax deed was void under section 22-85 of the Property Tax Code (35 ILCS 200/22-85 (West 2016)) because (1) the redemption period expired without a request for extension and before the filing of the

petition for tax deed; (2) the certificate assignments were invalid and, therefore, the true holder of the certificate, Millennium, did not take out and record the tax deed within one year from and after the time for redemption expired; and (3) Daniel did not have authority to direct the Land Trust to be the tax deed petitioner and "direct and submit fraudulent assignments." Under count II, DJJ alleged the motion to issue tax deed must be vacated under section 22-45 of the Property Tax Code (*id.* § 22-45) and section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) because (1) the tax deed petitioner failed to diligently ascertain, name, or direct notice to DJJ's registered agent in accordance with the notice requirements of the Property Tax Code and (2) the tax deed was procured by fraud under section 22-45(3) of the Property Tax Code (35 ILCS 200/22-45(3) (West 2016)). Under count III, DJJ requested indemnity.

¶ 8 Neldava filed an answer to the third amended petition. In the answer, Neldava raised the affirmative defense of ratification as to the allegations that the certificate assignments were fraudulent and void. Neldava attached an executed ratification to the answer. The ratification stated (1) the beneficiary of the Land Trust is O.M.A.M.E.G.A.N. trust; (2) Hildegard was the trustee of O.M.A.M.E.G.A.N. trust and held power of direction with respect to the Land Trust; (3) Hildegard granted Daniel power of attorney to execute certain duties associated with the Land Trust on her behalf; (4) the Land Trust was "unaware" that Millennium assigned the certificate of purchase to it; (5) Pilota filed a petition for tax deed on behalf of the Land Trust; and (6) Daniel, as attorney in fact for the Land Trust, assigned the certificate of purchase to Neldava. Furthermore, the trustee of the Land Trust averred that he would have (1) accepted the assignment of the certificate into the Land Trust, (2) authorized Pilota to file the petition for tax deed, and (3) authorize the assignment of the certificate to Neldava. DJJ filed a motion to dismiss Neldava's affirmative defense pursuant

to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)). The trial court denied the motion to dismiss.

¶ 9    The case proceeded to trial from July 22 to 26, 2021. At the trial, the parties called eight witnesses and admitted 62 exhibits into evidence. Pertinent to this appeal, Daniel testified that the certificate of purchase was issued to his company, Millennium, in 2014. Daniel hired Pilota to perform duties pertaining to the certificate. In particular, Daniel directed Pilota to assign the certificate to the Land Trust and to file a petition for tax deed on behalf of the Land Trust. Daniel subsequently assigned the certificate as attorney in fact for the Land Trust to Neldava. Daniel believed he had authority to assign the certificate to Neldava as power of attorney for Hildegard, who was the trustee and had power of direction of the O.M.A.M.E.G.A.N. trust, the beneficiary of the Land Trust, and as one of the successor beneficiaries of the O.M.A.M.E.G.A.N. trust. When asked who sold the certificate to Neldava, Daniel responded, "I don't know if you want to say I did personally, but myself and/or Millennium and/or the Land Trust." Daniel acknowledged that the contract concerning the sale of the certificate to Neldava stated that the transfer of the property was Millennium and Skirp Construction, Inc. Daniel explained Hildegard was the president of Skirp Construction prior to her death and Daniel was an officer of Skirp Construction. When asked why the contract does not state that the Land Trust is selling the certificate, Daniel explained, "both Millennium Land Development Corporation and Skirp Construction, Inc., the shares of those companies are owned by the same entity, namely the O.M.A.M.E.G.A.N. Trust, which is the beneficiary of the Chicago Title Land Trust."

¶ 10    Pilota testified that he was an attorney and practiced in tax deed and tax indemnity proceedings. Pilota stated Daniel originally retained Pilota to represent "Millennium at that time."

Daniel also retained Pilota as an agent for the Land Trust. Pilota assigned the certificate of purchase to the Land Trust on behalf of Millennium on October 1, 2015. Pilota also prepared the petition for tax deed on behalf of the Land Trust.

¶ 11    Patrick O'Flaherty testified that Neldava was his business. O'Flaherty stated he had "been driving by [the Guyon Hotel] for years" and "[n]obody called me back on the for sale sign that was on the property." In 2013, O'Flaherty contacted Daniel "to see if the taxes were paid and if it could be obtained that way." Daniel had previously performed property tax reduction work for O'Flaherty. After conducting research, Daniel informed O'Flaherty that the property taxes had not been paid and that the property was up for auction. Both Daniel and O'Flaherty agreed to participate in the tax sale with the understanding that Daniel would pay for the certificate of purchase for O'Flaherty. O'Flaherty explained, "It was my understanding that Dan was going to procure the amount that was owed to the county, whatever fines and fees had to go along with it, do the paperwork, and I would pay the county their taxes, and the deed would be issued to me."

¶ 12    Donald Jones testified he was the manager of DJJ. Jones currently owned his primary residence and paid taxes on the property. Jones also owned "[m]ore than ten" other properties in the past including four in Illinois. Jones became aware of the Guyon Hotel through a friend and later acquired the property through a judicial deed. Jones did not investigate the status of the property before DJJ acquired the judicial deed. Jones neither transferred the tax bills to DJJ nor received any tax bills. Jones stated he first became aware of the tax sale "[w]hen we had a contract on the property, the buyer came back with a whole bunch of issues, and we were alerted then." Jones does not recall the date of this event but acknowledged that the date of the contract was July 31, 2017. Jones stated that he was never advised about a tax sale, never been to the Cook County

Clerk's Office, and never ordered an estimate of redemption. Jones was aware that someone was trying to list the property for sale. When asked if he knew what Weininger was doing for DJJ in 2015, Jones testified, "Like I know he had—the property was listed by someone that wasn't a—it was listed by a realtor that wasn't someone I hired. So, he was sending a cease and desist letter and doing some other items." Jones was aware that Weininger sent a cease and desist letter to Ploszay of Altura Realty on November 3, 2016, and to Pancotto of Coldwell Banker Residential on May 22, 2017. When asked if he received a letter dated November 11, 2016, from Samuel Macaluso, Daniel's attorney, stating Millennium paid the taxes on the property and DJJ failed to meet the tax sale redemption period, Jones responded, "I don't recall." When shown interrogatories wherein he stated that he discovered the taxes were delinquent on August 30, 2013, Jones responded "I don't recall." Jones testified, if he had known about the delinquent taxes, he would have paid the taxes.

¶ 13    Weininger testified he represented DJJ concerning the Guyon Hotel. At the time, Weininger was employed with Johnson, Blumberg & Associates. He primarily handled "mortgage foreclosure but other liens as well, receiver lien foreclosure, judgment liens," and "it wasn't uncommon for me to come across some tax sale issue." Regarding his November 2016 letter, Weininger explained, "I wrote this letter to tell the real estate agent to terminate the listing because DJJ was the owner." When asked if he remembered reading a letter from Samuel Macaluso in 2016, Weininger responded, "Yes. I remember it but I don't remember like any of the other context." Weininger could not specifically remember taking any action pertaining to the property taxes after receiving Macaluso's letter. Weininger also could not specifically remember ordering an estimate of redemption in November 2016. Regarding the May 2017 letter, Weininger stated,

"I remember again there was some indication someone had listed the property, and we just notified them that DJJ was the owner, and that they should remove the listing." Weininger never received a formal notice that a tax sale and redemption date was pending on the Guyon Hotel.

¶ 14    Following the trial, the parties submitted briefs to the court. DJJ also filed a renewed section 2-615 motion to dismiss and alternative answer to the affirmative defense of ratification. The court entered judgment in favor of Neldava and against DJJ in its amended written order on December 17, 2021. As to count I, the court found a Trust may hold and convey any right, title, and interest in a certificate of purchase based on witness testimony and the Land Trust Beneficial Interest Disclosure Act (765 ILCS 405/0.01 *et seq.* (West 2020)). The court also found the transfer of the certificate from Millennium to the Land Trust and subsequently from the Land Trust to Neldava was proper where Daniel and Pilota had the authority under their respective roles to assign the certificate and the Land Trust trustee ratified prior unauthorized acceptance and transfer of the assignments.

¶ 15    As to count II, the court held DJJ failed to exercise due diligence. Specifically, the court found that, throughout the tax sale proceedings, (1) DJJ's attorney ordered an estimate of redemption for the tax sale on February 2, 2016, and November 8, 2016; (2) Weininger sent letters on behalf of DJJ demanding the Guyon Hotel not be listed for sale; and (3) Weininger received a letter from Macaluso stating Weininger's client failed to redeem the property by the redemption expiration date and advising Weininger to contact the county to confirm the information. Based on this evidence, the court determined "the knowledge of the pending tax sale proceeding must be imputed to DJJ at the very least by November of 2016, and at the earliest by February 2016, because the law firm was necessarily aware of the tax sale proceeding." The court also found "the

claim that DJJ and the relevant players were unaware of the tax deed delinquency when they had been involved in the mortgage foreclosure litigation seems incredible." The court further held DJJ failed to state a meritorious claim because "[t]here was no evidence of fraud presented to the [c]ourt regarding purchase or assignments of the certificate between Neldava, Chicago Title Land Trust, or Millennium." This appeal follows.

¶ 16                                    II. JURISDICTION

¶ 17    DJJ filed a third amended petition on May 28, 2021. The circuit court denied the petition in an amended order on December 17, 2021. On January 13, 2022, DJJ filed a notice of appeal. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), Rule 303 (eff. July 1, 2017), and Rule 304 (eff. Mar. 8, 2016).

¶ 18                                     III. ANALYSIS

¶ 19    On appeal, DJJ argues the circuit court erred in denying (1) the section 2-615 motion to dismiss the affirmative defense of ratification, (2) count I of the third amended petition alleging the tax deed was void under section 22-85 of the Property Tax Code, and (3) count II of the third amended petition alleging the court should vacate the order issuing the tax deed pursuant to section 22-45(3) of the Property Tax Code and section 2-1401 of the Code of Civil Procedure and issue an order directing DJJ to pay the reimbursement amount under section 22-80 of the Property Tax Code. We review each issue respectively.

¶ 20                                  A. Motion to Dismiss

¶ 21    DJJ argues the circuit court erred in denying the section 2-615 motion to dismiss the affirmative defense of ratification.[2] Specifically, DJJ claims the court improperly considered matters outside of Neldava's ratification defense allegations. DJJ also contends Neldava failed to state a legally recognized claim of ratification because (1) a land trust cannot hold a certificate of purchase, (2) Pilota's and Daniel's unauthorized assignments cannot be ratified, and (3) the trustee's ratification has no legal effect. Neldava asserts that DJJ waived any defect in the affirmative defense pleading.

¶ 22    A motion to dismiss brought under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)) is used to attack defects in the pleading. An affirmative defense must allege facts with the same degree of specificity required to establish a cause of action. *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 IL App (1st) 121111, ¶ 31. As with all section 2-615 motions, a 2-615 motion to dismiss affirmative defenses admits all well-pleaded facts constituting the defenses and attacks only the legal sufficiency of those facts. *Id.* An affirmative defense should not be stricken where well-pleaded facts raise the possibility that the party asserting

_____

[2]In the circuit court, DJJ challenged Neldava's affirmative defense of ratification on three occasions: DJJ (1) filed a section 2-615 motion to dismiss before trial, (2) moved to dismiss the affirmative defense of ratification during trial, and (3) filed a renewed section 2-615 motion to dismiss at the end of trial. In its appellate brief, although not explicitly stated, it appears DJJ challenges the renewed section 2-615 motion to dismiss based on its argument that the circuit court improperly relied on trial evidence in denying the motion. The record shows the circuit court did not make an independent ruling on the motion but, instead, held that the Land Trust trustee ratified the assignments in its final written order. A litigant's failure to obtain a ruling on a motion does not translate into a denial of the motion by the court. *Hadley v. Ryan*, 345 Ill. App. 3d 297, 303 (2003). It is the responsibility of the party filing a motion to request the trial judge to rule on it, and when no ruling has been made on a motion, the motion is presumed to have been abandoned absent circumstances indicating otherwise. *Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135, 142 (2006). The argument raised in DJJ's renewed motion to dismiss is the same as the one in its initial motion to dismiss. The trial court denied the initial motion to dismiss. As such, we review DJJ's claim as it derives from the circuit court's denial of the initial motion to dismiss.

the defense will prevail. *Id.* A reviewing court should disregard any conclusions of fact or law not supported by allegations of specific fact. *Reverse Mortgage Funding, LLC v. Catchins*, 2023 IL App (1st) 221197, ¶ 23. When a defense is founded upon a written instrument, that instrument must be attached to the pleading as an exhibit, and that exhibit constitutes a part of the pleading for purposes of a motion to dismiss. *F.H. Prince & Co. v. Towers Financial Corp.*, 275 Ill. App. 3d 792, 797 (1995). A trial court's ruling on a section 2-615 motion to dismiss is subject to a *de novo* review on appeal. *Heastie v. Roberts*, 226 Ill. 2d 515, 530-31 (2007).

¶ 23    We first address Neldava's argument that DJJ waived its right to renew its section 2-615 motion to dismiss Neldava's affirmative defense because it answered the affirmative defense and proceeded to trial and judgment was entered against DJJ. Neldava relies on *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54 (1994), to support its argument. The *Adcock* court recognized, where a circuit court denies a party's motion to dismiss, and that party elects to file an answer to the pleading, the party waives any defect in the pleading. *Id.* at 60. "A corollary to the waiver principle is the doctrine of aider by verdict." *Id.* Under this doctrine, if a party allows an action to proceed to verdict, the verdict cures technical and clerical errors as well as defective allegations of essential facts. *Id.* at 60-61.

¶ 24    There is an exception to the doctrine of waiver and aider by verdict that allows a party to raise at any time a claim that the pleading fails to state a cause of action. *Id.* at 61. "[T]his exception applies only when a complaint fails to state a recognized cause of action. The exception does not apply where the complaint states a recognized cause of action, but contains an incomplete or otherwise insufficient statement of that cause of action." *Id.* at 61-62. "Stated more succinctly, courts draw a distinction between a complaint that alleges no cause of action, which may be

challenged at any time, and one which defectively or imperfectly alleges a cause of action." *Id.* at 62. Indeed, this exception is equally applicable to motions to dismiss an affirmative defense under section 2-615. Our supreme court stated, "The objection that *** a [pleading] does not state a defense[ ] may be raised at any time, either before or after judgment." *Krachock v. Department of Revenue*, 403 Ill. 148, 153 (1949). Because DJJ challenges whether Neldava raised a legally recognized defense, we review DJJ's claim.

¶ 25    DJJ argues that a land trust can only hold title to real property and that Illinois case law has classified a certificate of purchase as personal property. DJJ asserts that, therefore, a land trust cannot hold a certificate of purchase and ratification of the unauthorized assignment from Millennium to the Land Trust is impossible. Neldava claims a land trust may hold a certificate of purchase because the certificate is a charge on real property. A finding that a land trust cannot hold a certificate of purchase would defeat Neldava's ratification defense. Hence, we first address, as an issue of first impression, whether a land trust can hold a certificate of purchase issued in a tax sale proceeding. This argument presents a question of law, which we review *de novo. People ex rel. T-Mobile USA, Inc. v. Village of Hawthorn Woods*, 2012 IL App (2d) 110192, ¶ 39.

¶ 26    We begin by analyzing the applicable land trust law. The Illinois land trust is a unique creation of the Illinois bar with its origins rooted in case law rather than statute. *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 487 (1979). "The land trust has, over the years, served as a useful vehicle in real estate transactions for maintaining secrecy of ownership and allowing ease of transfer." *Id.* While a common law trust creates a split between the legal title in the trustee and the equitable title in the beneficiary, an Illinois land trust places both the legal and equitable title in the trustee. *FirstMerit Bank, N.A. v. Soltys*, 2015 IL App (1st) 140100, ¶ 22. " 'An Illinois land

trust is an arrangement under which legal and equitable title to real property is held by a trustee and the interest of the beneficiary is personal property.' " *Id.* ¶ 19 (quoting *Patrick v. Village Management*, 129 Ill. App. 3d 936, 939 (1984)). " 'A land trust is created by the execution and recording of a deed in trust transferring all legal and equitable title to real property to a trustee.' " *Id.* ¶ 21 (quoting *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 607 (7th Cir. 1987)). " 'A second document, the trust agreement, is contemporaneously executed and outlines the right of the beneficiary to retain absolute control over the management, use, and disposition of the property and to receive all proceeds from the property.' " *Id.* (quoting *Redfield*, 818 F.2d at 607).

¶ 27    Several Illinois statutes regulate specific functions of a land trust. See generally 765 ILCS 405/0.01 *et seq.* (West 2022); 765 ILCS 407/1 *et seq.* (West 2022); 765 ILCS 410/0.01 *et seq.* (West 2022); 765 ILCS 415/0.01 *et seq.* (West 2022); 765 ILCS 420/1 *et seq.* (West 2022); 765 ILCS 425/0.01 *et seq.* (West 2022); 765 ILCS 430/0.01 *et seq.* (West 2022); 765 ILCS 435/1 *et seq.* (West 2022). Aside from the Sale of Residential Property Subject to Land Trust Act (765 ILCS 430/0.01 *et seq.* (West 2022)), which addresses the selling of property in a land trust, these statutes define land trust as follows:

"[A]ny express agreement or arrangement whereof a use, confidence or trust is declared of any land, or of any charge upon land, for the use or benefit of any beneficiary, under which the title to real property, both legal and equitable, is held by a trustee, subject only to the execution of the trust, which may be enforced by the beneficiaries who have the exclusive right to manage and control the real estate, to have the possession thereof, to receive the net proceeds from the rental, sale, hypothecation or other disposition thereof, and under

which the interest of the beneficiary is personal property only." 765 ILCS 405/1 (West 2022).

See also 765 ILCS 415/2 (West 2022); 765 ILCS 420/2 (West 2022).

¶ 28     Notably, the statutory definition of land trust includes "any charge upon land." This court has found that a certificate of purchase constitutes a charge on the land. See *City of Chicago v. City Realty Exchange, Inc.*, 127 Ill. App. 2d 185 (1970). Specifically, this court stated,

> "One of the interests a tax purchaser acquires through his certificate of purchase is the right to be paid the price of the sale, interest, costs and any other taxes paid, if there is redemption. This right is a charge on the real estate for payment of debt represented by the taxes." *Id.* at 190.

¶ 29     We also find guidance in the Modern Land Trust Practice manual from the Illinois Institute for Continuing Legal Education authored by David Lanciotti. Lanciotti explained, "Although a title interest created by a conventional deed in trust is by far the most common arrangement established with a trustee, the land trust can hold non-title interests in real estate ***." David J. Lanciotti, *Holding Non-Title Interests*, in Modern Land Trust Practice § 3.12 (Ill. Inst. for Cont. Legal Educ. 2020). For instance, "it is not unusual to see a land trust holding a bidder's interest in *** a real estate tax sale ***. If the bid ripens into the right to receive title, the trust becomes permanently established. If redemption is made, the trust is closed." David J. Lanciotti, *Contract Lessee's, Purchaser's, and Bidder's Interest*, in Modern Land Trust Practice § 3.14 (Ill. Inst. for Cont. Legal Educ. 2020).

¶ 30     Indeed, a holder of a certificate of purchase has a lien that can ripen into title upon compliance with statutory requisites of the Property Tax Code. If a court finds compliance with

the Property Tax Code, it enters an order directing the county clerk to issue a tax deed to the purchaser of the certificate of purchase or his or her assignee—in this case a land trust. See 35 ILCS 200/22-40 (West 2016). The county clerk issues a tax deed to the land trust, and the trustee holds title to the real estate. David J. Lanciotti, *Contract Lessee's, Purchaser's, and Bidder's Interest*, in Modern Land Trust Practice § 3.14 (Ill. Inst. for Cont. Legal Educ. 2020). Based on our legal jurisprudence and supporting sources, we find a land trust may hold a certificate of purchase. As such, a certificate of purchase may be assigned to a land trust.

¶ 31    In light of our holding, we next determine whether Neldava presented a legally recognized affirmative defense of ratification of the unauthorized assignments of the certificate of purchase. When an act is performed for the benefit of another by a person without authority, or by an authorized agent in excess of his authority, the person for whose benefit the act was done may ratify the act. *Kulchawik v. Durabla Manufacturing Co.*, 371 Ill. App. 3d 964, 970 (2007). Ratification occurs where the principal, with knowledge of the material facts of the unauthorized transaction, either retains the benefits of the transaction or takes a position consistent with affirmation of the transaction. *Karetzkis v. Cosmopolitan National Bank*, 37 Ill. App. 2d 484, 491 (1962); *Schoenberger v. Chicago Transit Authority*, 84 Ill. App. 3d 1132, 1138-39 (1980). Ratification may be expressed or inferred. *Schoenberger*, 84 Ill. App. 3d at 1138. Ratification of an unauthorized act is tantamount to an original authorization and confirms what was originally unauthorized. *Kulchawik*, 371 Ill. App. 3d at 970. "The general rule is that the act of ratification must be of the same nature as that which would be required for conferring the authority in the first instance." (Internal quotation marks omitted.) *Prodromos v. Poulos*, 202 Ill. App. 3d 1024, 1029 (1990).

¶ 32    An assignment operates to transfer some identifiable property right, interest, or claim from the assignor to assignee. *Department of Transportation v. Heritage-Pullman Bank & Trust Co.*, 254 Ill. App. 3d 823, 826 (1993). "Generally, no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment." (Internal quotation marks omitted.) *Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d 85, 100 (2008). "A valid assignment needs only to assign or transfer the whole or a part of some particular thing, debt, or chose in action and it must describe the subject matter of the assignment with sufficient particularity to render it capable of identification." (Internal quotation marks omitted.) *Id.* "Whether an assignment has occurred is dependent upon proof of intent to make an assignment and that intent must be manifested." (Internal quotation marks omitted.) *Id.* Furthermore, "an assignment shall not be effective towards the obligor or a third party unless accepted by the obligor or notified to him." (Internal quotation marks omitted.) *Overseas Development Disc Corp. v. Sangamo Construction Co.*, 686 F.2d 498, 504 (7th Cir. 1982). Assignments are "subject to the same requisites for validity as are other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration." (Internal quotation marks omitted.) *American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d at 100.

¶ 33    In its affirmative defense of ratification, Neldava alleged that following the tax sale for the Guyon Hotel, a certificate of purchase was issued to Millennium. In October 2015, Millennium, through its attorney Pilota, assigned the certificate to the Land Trust. In May 2017, Daniel, as attorney in fact for the Land Trust, assigned the certificate to Neldava. Neldava noted DJJ's challenges to the assignments are that (1) Pilota had no authority to assign the certificate to the

Land Trust, (2) the Land Trust was not aware and did not accept the assignment, (3) Daniel did not have authority to assign the certificate to Neldava, and (4) the Land Trust was not aware of the assignment to Neldava. Neldava alleged, to the extent DJJ's allegations were true, "the Land Trust's express ratification, acknowledgment, and acceptance of those specific acts approves what was originally an unauthorized act." In the ratification, the Land Trust trustee averred that the Land Trust would have accepted Millennium's assignment of the certificate and would have authorized the assignment of the certificate to Neldava. Considering these allegations, we find Neldava sufficiently pled a legally recognized defense of ratification.

¶ 34    To support its argument that Neldava cannot plead a ratification defense, DJJ asserts that Neldava misconstrues the holding in *Prodromos*, 202 Ill. App. 3d 1024. In *Prodromos*, Jerry Poulos agreed to sell parcels of real estate to John Prodromos. *Id.* at 1027. First National Bank of Skokie held legal title to the real estate as trustee of trust No. 50102, and Poulos was the sole beneficiary of the trust. *Id.* at 1026. Poulos signed the real estate sales contract as the agent of First National Bank of Skokie. *Id.* at 1027. Subsequently, Prodromos sued First National Bank of Skokie and Poulos for specific performance of the sales contract. *Id.* at 1026. The defendants filed a motion to dismiss the action alleging, *inter alia*, Poulos did not have written authority to act as an agent on behalf of the trust in executing the contract and the trustee never ratified the contract. *Id.* The circuit court granted the motion. *Id.* On appeal, this court considered whether the trustee ratified Poulos's act and found no evidence of ratification. *Id.* at 1029-30. DJJ asserts, while the *Prodromos* court applied principles of ratification in a case involving a land trust, there was no issue as to whether the land trust could hold the property at issue. DJJ claims, here, the Land Trust trustee could not ratify Daniel's assignment of the certificate of purchase because a land trust can

hold only title to real property. However, as we previously held, a land trust may hold a certificate of purchase. Furthermore, DJJ cites *In re Estate of Crooks*, 266 Ill. App. 3d 715 (1994), *Feinberg v. Great Atlantic & Pacific Tea Co.*, 131 Ill. App. 2d 1087 (1970), and *Alward v. Jacob Holding of Ontario LLC*, 2019 IL App (5th) 180332, ¶ 17, for the proposition that a beneficiary of a land trust may not step into the position of a trustee and convey title to property. However, none of these cases address ratification. Here, we find that the circuit court properly found that Neldava pled and proved the affirmative defense of ratification.

¶ 35                    B. Count I of the Third Amended Petition

¶ 36    DJJ argues the circuit court erred in denying count I of the third amended petition as it alleges that the tax deed is void under section 22-85 of the Property Tax Code. Section 22-85 of the Property Tax Code provides in pertinent part:

> "Failure to timely take out and record deed; deed is void. Unless the holder of the certificate purchased at any tax sale under this Code takes out the deed in the time provided by law, and records the same within one year from and after the time for redemption expires, the certificate or deed, and the sale on which it is based, shall, after the expiration of the one year period, be absolutely void with no right to reimbursement." 35 ILCS 200/22-85 (West 2016).

¶ 37    Specifically, DJJ claimed Millennium cannot legally convey a certificate of purchase into a land trust, and therefore, Millennium's assignment to the Land Trust was invalid and the Land Trust did not have authority to assign the certificate to Neldava. Consequently, Millennium remained the true holder of the certificate and failed to take and record the deed within one year of the expiration of the redemption period in violation of section 22-85. DJJ claims that

- 19 -

Millennium's failure to take and record the deed within the required time makes the certificate of purchase void pursuant to section 22-85. Neldava asserts the assignments were valid because a Land Trust may hold and transfer title, right, and interest in a certificate of purchase, and the Land Trust trustee ratified all prior unauthorized transactions. Neldava further asserts the tax deed is not void because the circuit court had jurisdiction over the case. The circuit court reviewed DJJ's void challenge pursuant to section 2-1401(f) of the Code of Civil Procedure.[3] A section 2-1401 petition seeking relief based on an argument that the underlying judgment is void is reviewed *de novo*. *Bank of New York Mellon v. Thompson*, 2013 IL App (1st) 122859-U, ¶ 12.

¶ 38      We first address DJJ's voidness argument. Whether a judgment is void or voidable presents a question of jurisdiction. *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 27. Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time. *People v. Castleberry*, 2015 IL 116916, ¶ 11. "Judgments entered in a civil proceeding may be collaterally attacked as void only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties." (Internal quotation marks omitted.) *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998). A voidable judgment, in contrast, "is one entered erroneously by a court having jurisdiction and is not subject to collateral attack." (Internal quotation marks omitted.) *Castleberry*, 2015 IL 116916, ¶ 11. When a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law. *Mitchell*, 181 Ill. 2d at 174. A voidable judgment

---

[3]Section 22-45 limits the grounds for relief that can be raised in a section 2-1401 petition challenging an order issuing a tax deed. See 35 ILCS 200/22-45 (West 2016). However, this appellate court found a petitioner is not required to comply with section 22-45 when void challenges are raised under section 2-1401(f) because a void judgment may be attacked at any time. *In re Application of the Will County Collector*, 2018 IL App (3d) 160659, ¶ 21; *In re Application of the County Treasurer*, 2012 IL App (1st) 101976, ¶ 31.

"is correctable on review [only] if a timely appeal is taken." *People v. Speed*, 318 Ill. App. 3d 910, 914 (2001).

¶ 39    In this case, " '[a] tax-sale proceeding is *in rem* and the court acquires jurisdiction over the land when the county collector makes his application for judgment and order for sale.' " *In re Application for a Tax Deed*, 2020 IL App (5th) 190168, ¶ 27 (quoting *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159, 165 (1983)). "Once the court acquires jurisdiction, it retains jurisdiction 'to make all necessary findings and enter all necessary orders supplemental to the original tax sale.' " *Id.* (quoting *Vulcan* Materials Co., 96 Ill. 2d at 165). "Thus, while section 22-85 purports to 'void' the tax deed, it is not clear that a violation of section 22-85 would divest the court of jurisdiction, rending the order and tax deed void, and subjecting them to collateral attack via a section 2-1401(f) petition." *Id.* Here, DJJ does not challenge the circuit court's jurisdiction. Rather, DJJ argues that the tax deed is void because Neldava failed to comply with section 22-85 of the Property Tax Code. Pursuant to case law, the tax deed is not void. Accordingly, the circuit court did not err in finding in favor of Neldava on count I of the third amended petition alleging the tax deed is void under section 22-85 of the Property Tax Code.

¶ 40                    C. Count II of the Third Amended Petition

¶ 41    DJJ argues the circuit court erred in denying count II of the third amended petition alleging the court should vacate the order issuing the tax deed under section 22-45(3) of the Property Tax Code and section 2-1401 of the Code of Civil Procedure. Section 22-45 provides:

"Tax deeds issued under Section 22-40 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Sections 2-1203 or 2-1401 of the Code of Civil Procedure in the

same manner and to the same extent as may be had under those Sections with respect to final orders and judgments in other proceedings. The grounds for relief under Section 2-1401 shall be limited to:

(1) proof that the taxes were paid prior to sale;

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30." 35 ILCS 200/22-45 (West 2016).

¶ 42 Specifically, DJJ claims it set forth a meritorious claim that the tax deed was procured by fraud and exercised its due diligence in presenting its claim and filing the 2-1401 petition. DJJ asserts, as a result, the court should issue an order directing DJJ to pay the reimbursement amount under section 22-80 of the Property Tax Code. Neldava asserts the circuit court's finding that DJJ failed to provide any evidence of fraud and failed to exercise due diligence was not an abuse of discretion.

¶ 43 First, we address the discrepancy between the parties' standards of review. Citing *People v. Vincent*, 226 Ill. 2d 1, 14 (2007), DJJ claims the circuit court's judgment is the functional equivalent of a dismissal for failure to state a cause of action, and therefore, we must review this issue *de novo*. Neldava argues that the standard of review is an abuse of discretion.

¶ 44    Clarifying *Vincent*'s application of *de novo* review, our supreme court held "*Vincent* must be viewed in its narrow context of a section 2-1401 petition that raises a purely legal challenge to a judgment by alleging that it is void under subsection (f) of section 2-1401." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 47. However, "[i]n stark contrast to a *Vincent*-type petition, a section 2-1401 petition that raises a fact-dependent challenge to a final judgment or order must be resolved by considering the particular facts, circumstances, and equities of the underlying case." *Id.* ¶ 50. Under a fact-dependent challenge, the circuit court's decision on the section 2-1401 petition is reviewed for an abuse of discretion. *Id.* ¶ 51.

¶ 45    In this case, DJJ claims Neldava procured the tax deed by fraud because Neldava, Millennium, and Skirp Construction concealed that Millennium, and not the Land Trust, was the true holder of the certificate. DJJ's claim requires us to consider the particular facts of the case, and thus, raises a fact-dependent challenge. Therefore, we review this issue for an abuse of discretion. An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 46    Having determined the appropriate standard of review, we now consider whether the trial court abused its discretion when it denied count II of the third amended petition pursuant to sections 22-45 and 2-1401. Section 22-45 states, in relevant part:

    "Tax deeds issued under Section 22-40 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Sections 2-1203 or 2-1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under those Sections with respect to

final orders and judgments in other proceedings. The grounds for relief under Section 2-1401 shall be limited to:

* * *

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee[.]" 35 ILCS 200/22-45 (West 2016).

¶ 47 Section 2-1401 establishes a statutory procedure that allows for the vacatur of a judgment older than 30 days or a judgment that is void. 735 ILCS 5/2-1401 (West 2016). The purpose of a section 2-1401 petition is to alert the circuit court to facts that, if they had been known at the time, would have precluded entry of the judgment. *Lofendo v. Ozog*, 118 Ill. App. 3d 237, 240-41 (1983).

"[T]o be entitled to relief from a final judgment or order under section 2-1401, the petition must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Walters*, 2015 IL 117783, ¶ 37.

¶ 48 To prove the existence of a meritorious defense or claim, a petitioner must allege facts that would have prevented entry of the judgment if they had been known by the circuit court. *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 457 (2000). Due diligence requires the 2-1401 petitioner to have a reasonable excuse for failing to act within the appropriate time. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222 (1986). The petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the

judgment. *Id.* "No bright-line rule exists for judging whether a petitioner has acted diligently. Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances." *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99-100 (2006). In determining the reasonableness of the excuse offered by the petitioner, the court must consider all the circumstances attendant upon entry of the judgment, including the conduct of the litigants and their attorneys. *Airoom*, 114 Ill. 2d at 222. "[T]he quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence." *Walters*, 2015 IL 117783, ¶ 37.

¶ 49     Here, the circuit court held DJJ failed to state a meritorious claim because "[t]here was no evidence of fraud presented to the Court regarding purchase or assignments of the certificate between Neldava, Chicago Title Land Trust, or Millennium." The court also held DJJ failed to exercise due diligence. The court found that, throughout the tax sale proceedings, (1) DJJ's attorney ordered an estimate of redemption for the tax sale on February 2, 2016, and November 8, 2016, (2) Weininger sent letters on behalf of DJJ demanding the Guyon Hotel not be listed for sale, and (3) Weininger received a letter from Macaluso stating Weininger's client failed to redeem the property by the redemption expiration date and advising Weininger to contact the county to confirm the information. Based on this evidence, the trial court determined "the knowledge of the pending tax sale proceeding must be imputed to DJJ at the very least by November of 2016, and at the earliest by February 2016, because the law firm was necessarily aware of the tax sale proceeding." The court also found "the claim that DJJ and the relevant players were unaware of the tax deed delinquency when they had been involved in the mortgage foreclosure litigation seems incredible."

¶ 50    We agree with the trial court that DJJ failed to allege any facts showing Neldava procured the tax deed by fraud pursuant to section 22-45(3). "Generally, fraud in a tax deed proceeding has been defined as a wrongful intent—an act calculated to deceive." (Internal quotation marks omitted.) *In re Application of the County Treasurer and ex officio County Collector of Cook County*, 2015 IL App (1st) 133693, ¶ 23. This court has more broadly defined fraud in tax deed proceedings to include "[t]he failure to inform the court of any facts that might change the court's ruling." (Internal quotation marks omitted.) *Id.* DJJ claims the tax deed was procured by fraud because Daniel and Pilota "concealed from the trial court that Millennium and Skirp Construction were selling the tax lien Certificate while falsely representing to the trial court that the Land Trust owned the Certificate."

¶ 51    The certificate of purchase sale contract between Neldava, Millennium, and Skirp Construction wherein Millennium and Skirp Construction are listed as the sellers of the certificate of purchase at issue may suggest how Millennium viewed its ownership of the certificate. However, any inference that this evidence shows Millennium intentionally concealed itself as true holder of the certificate from the circuit court is contradicted by the evidence that the certificate was assigned to the Land Trust. At trial, Daniel testified he directed Pilota to assign the certificate of purchase to the Land Trust and to file a petition for tax deed on behalf of the Land Trust. Pilota testified he assigned the certificate of purchase to the Land Trust on behalf of Millennium on October 1, 2015. The document evincing the assignment from Millennium to the Land Trust was admitted into evidence. Furthermore, Daniel explained why Millennium and Skirp Construction are listed as sellers of the certificate in the sale contract. Specifically, Daniel stated, "both Millennium Land Development Corporation and Skirp Construction, Inc., the shares of those

companies are owned by the same entity, namely the O.M.A.M.E.G.A.N. Trust, which is the beneficiary of the Chicago Title Land Trust." Absent any evidence of an intent to deceive the court or failure to inform the court of any facts pertaining to the judgment, DJJ failed to state a meritorious fraud claim.

¶ 52    Furthermore, we acknowledge DJJ filed the original complaint raising a section 2-1401 claim shortly after the court entered its order issuing the tax deed to Neldava. However, DJJ failed to exercise due diligence in presenting the claim before the circuit court. DJJ claims Weininger "testified that he did not recall knowing about the tax sale on the property, did not receive any notice of the tax sale, and if he would have, he would have sent it to DJJ." The trial evidence undermines Weininger's testimony. On October 28, 2015, Pilota, on behalf of the Land Trust, filed a petition for tax deed. Weininger's then law firm, Johnson, Blumberg & Associates, ordered an estimate of redemption regarding the Guyon Hotel from the Cook County Clerk's Office on February 2, 2016. The estimate of redemption invoice references the subject tax sale and certificate of purchase number. On November 3, 2016, after being informed of an attempted sale of the Guyon Hotel, Weininger sent a letter to Ploszay of Altura Realty stating that Ploszay should "immediately terminate any and all advertisements or listings on the Property for any purpose." On November 8, 2016, Johnson Blumberg & Associates ordered an estimate of redemption. The estimate states that the property was sold to Millennium in a scavenger sale and the final redemption date was June 10, 2016. On May 22, 2017, after being informed of another attempted sale, Weininger sent a letter to Pancotto of Coldwell Banker Residential stating that Pancotto should "immediately terminate any and all advertisements or listings on the Property for any purpose." Moreover, when asked if he remembered reading a letter from Macaluso in 2016 stating Millennium paid the taxes

on the property and DJJ failed to meet the redemption period, Weininger responded, "Yes. I remember it but I don't remember like any of the other context."

¶ 53    Hence, DJJ, through its attorney, was aware of the tax sale proceedings since February 2016 but provides no reasonable excuse for failing to act in presenting its fraud claim to the circuit court. Therefore, we find DJJ failed to establish due diligence under section 2-1401. Because DJJ failed to meet the requisite elements to obtain relief, we find the circuit court did not abuse its discretion in finding in favor of Neldava on count II of the third amended petition alleging the court should vacate the order issuing the tax deed under section 22-45(3) of the Property Tax Code and section 2-1401 of the Code of Civil Procedure and issue an order directing DJJ to pay the reimbursement amount under section 22-80 of the Property Tax Code.

¶ 54                                  IV. CONCLUSION

¶ 55    We find the circuit court did not err in denying the motion to dismiss the affirmative defense of ratification. We further find the circuit court did not err in finding in favor of Neldava on count I of the third amended petition because the tax deed is not void. We also find DJJ failed to satisfy the requisite elements to obtain relief under section 2-1401 of the Code of Civil Procedure and, consequently, section 22-45(3) of the Property Tax Code. Therefore, the circuit court did not abuse its discretion by finding in favor of Neldava on count II of the third amended petition. Accordingly, we affirm the circuit court's judgment.

¶ 56    Affirmed.

*In re Application of the County Treasurer & ex officio County Collector of Cook County*,
**2023 IL App (1st) 220070**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2015-COTD-003154; the Hon. Maureen O. Hannon, Judge, presiding. |
| **Attorneys for Appellant:** | Mindy S. Salyer and Amanda L. Moressi, of Salyer Law Offices, LLC, and Ashley W. Brandt and Emily Knight, of Tucker Ellis LLP, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Terry J. Carter and Jamie L. Schmidtke, of Carter Legal Group, P.C., of Chicago, for appellee. |